[Civ. No. 45990. Second Dist., Div. Two. Jan. 22, 1976.]

RIGOBERTO AYALA, Plaintiff and Respondent, v.
UNEMPLOYMENT INSURANCE
APPEALS BOARD et al., Defendants and Appellants

**COUNSEL**

Evelle J. Younger, Attorney General, Willard A. Shank, Assistant Attorney General, Edward M. Belasco and Ronald Gold, Deputy Attorneys General, for Defendants and Appellants.

Henry Giler and Fred Okrand for Defendants and Respondents.

**OPINION**

**ROTH, P. J.**—Pursuant to respondent Ayala's petition predicated upon undisputed facts, the superior court mandated California Unemployment Insurance Appeals Board (Board) (Unemp. Ins. Code, §§ 401-411)[1] and Department of Employment (§ 301) (Department) to complete

---

[1]Unless otherwise noted, all references are to the Unemployment Insurance Code.

payments to him of insurance benefits in the amount of $1,898 under section 140.5 in accordance with an award which the Department had previously made. Board and Department[2] appeal.

Ayala is an illegal alien residing in the United States without a work permit who was employed by the same employer from 1968 until laid off on February 18, 1972 because he was physically unable to work. (§ 2626.)

During his employment Ayala had made payments as defined by section 144 intended to compensate in part for the wage loss sustained by reason of sickness or injury. (§§ 2601, 2608-2611.) Within a few days after lay-off Ayala filed a claim. (§§ 2652 and 140.5.) Department accepted the claim; approved a total disability award to respondent of $1,898 to be paid in weekly installments of $73 and Department continued said benefit payments between March 2, 1972 and May 25, 1972, for a total of $868.43. Department determined on or about the latter date that respondent had been residing in the country illegally without a work permit; did not qualify for disability benefits; payments were stopped and sought to recover the $868.43 previously paid.

Respondent appealed Department's decision to a referee of Board. On October 5, 1974, after a hearing, the referee reversed Department's decision and ruled that respondent was eligible. Department appealed the referee's decision to Board and reversed the referee's decision and held respondent liable to Department for the $868.43 it had previously paid. Ayala then petitioned the superior court for relief and that court mandated the judgment appealed from.

Board urges that the judgment cannot stand because Ayala cannot under the law present a valid claim since any claim he makes is tainted by his status as an illegal resident without a work permit. Board argues, too, that since the United States government in title 8 of the United States Code imposes rigid requirements on aliens and controls the circumstances under which they can work, California must heed the law and policy evidenced by said code in order to retain its eligibility to receive millions of dollars from the United States for benefit payments. In a two-pronged attack, Board asserts the claim is defective because (1) reading sections 1253 and 2602 indicates respondent is not available to work if called upon; and (2) Ayala's claim is proscribed by the Wagner-Peyser Act (29 U.S.C. §§ 49-49(k)) a federal statute by which California is bound.

[2]Department has abandoned its appeal.

The first argument predicated upon section 1253 is clearly erroneous. Section 1253 in pertinent part reads: "An unemployed individual is eligible to receive unemployment compensation benefits with respect to any week only if the director finds that: . . . (c) he was able to work and available for work that week. . . ." Board argues fallaciously that Ayala cannot be "able to work and available for work . . ." because he is an alien. However, section 2602 specifically provides that section 1253 which deals with unemployment insurance does not apply to the sections dealing with disability benefits.

Respondent is covered by section 140.5 which defines disability benefits as "money payments payable . . . to an eligible unemployed individual with respect to his wage losses due to unemployment as a result of illness or other disability *resulting in such individual being unavailable or unable to work due to such illness or disability.*" (Italics added.) ▉ Respondent by definition is an individual who is eligible for disability benefits by being unavailable or unable to work due to such illness or disability.

The rule for determining eligibility for disability benefits is found in California Administrative Code, title 22, section 2601-1(r): "For the purposes of section 140.5 of the code no individual shall be deemed eligible for disability benefits for any week of unemployment unless such unemployment is due to a disability. If an individual has been neither employed nor registered for work at a public employment office or other place approved by the director for more than three months immediately preceding the beginning of a period of disability, he is not eligible for benefits unless the department finds that the unemployment for which he claims benefits is due to a disability and is not due to his previous withdrawal from the labor market." (See Cal. Unemp. Ins. App. Bd., Disability Decisions Nos. 25, 79, 363, 577 and 598.) It is undisputed that respondent's employment was terminated because he was disabled and there is no three-month or any gap between his claim and his disability. At the time of the disability respondent had not withdrawn from the labor market and respondent's work record shows that he was genuinely attached to the labor market.

Appellant relies on *Alonso* v. *State of California* (1975) 50 Cal.App.3d 242 [123 Cal.Rptr. 536]. In *Alonso* the illegal alien applied for unemployment insurance benefits and the court held he was not eligible to receive such benefits since " . . . he was not 'available for work' within the meaning of section 1253, subdivision (c) . . . [and] a claimant is eligible . . .

only if '[h]e was able to work and available for work that week.' [p. 245] . . . even if . . . [he] put money into the fund, . . . His entry is illegal and any subsequent acts done by him in this country would be in furtherance of that illegal entry." (P. 253.)

To conclusively presume that an illegal alien who has been attached to the labor force and who has in all respects complied with the sections of the Unemployment Insurance Code cannot, simply because he is an illegal alien, collect disability benefits is contrary to the statutes. ▮ Eligibility for disability benefits fixed by statute cannot be altered by Board. (*Morris* v. *Williams* (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697].) In addition, the Supreme Court of the United States has consistently invalidated statutory or administrative classifications bottomed on such conclusive presumptions. (*Stanley* v. *Illinois* (1972) 405 U.S. 645 [31 L.Ed.2d 551, 92 S.Ct. 1208]; *Frontiero* v. *Richardson* (1973) 411 U.S. 677 [36 L.Ed.2d 583, 93 S.Ct. 1764]; *Vlandis* v. *Kline* (1973) 412 U.S. 441 [37 L.Ed.2d 63, 93 S.Ct. 2230]; *Cleveland Board of Education* v. *LaFleur* (1974) 414 U.S. 632 [39 L.Ed.2d 52, 94 S.Ct. 791].

▮ The state Legislature, recognizing the difference in reasons for unemployment, apparently intended a different type of administration with respect to disability and unemployment insurance as indicated by its mandate in section 2602 that the provisions of section 1253 should not apply to disability insurance and the Department pointed out above has by its Administrative Code recognized and provided for the distinction.

8 United States Code section 1324 also relied on by appellant, deals with the harboring of illegal aliens and specifically states: " . . . *Provided however,* that for the purposes of this section, employment (including the usual and normal practices incident to employment) shall not be deemed to constitute harboring." Disability benefits which are normal incidents of employment are thus allowable to respondent under federal law.[3]

It should be noted, too, that the Wagner-Peyser Act enunciates a *policy* of preventing illegal aliens from competing for jobs, and establishes a system of *employment* services for persons legally qualified to work in

[3]See *Dolores Canning Co.* v. *Howard* (1974) 40 Cal.App.3d 673, 684-685 [115 Cal.Rptr. 435], which quotes from the Committee on the Judiciary House Report No. 93-108. " 'Not only is the employment of unlawful aliens not illegal under present law, but such employment actually appears to be condoned by the existing priviso in [Immigration and Nationality Act] section 274(a)(4) 8 U.S.C. § 1324(a)(4)] that employment shall not be deemed to constitute the harboring of illegal aliens.' "

this country. The Wagner-Peyser Act has no relation to a state system of *disability* benefits which is financed from worker contributions.

The applicable sections of the Unemployment Insurance Code require payment of Ayala's claim; nothing in the Wagner-Peyser Act or title 8, section 1324, of the United States Code directly or suggestively proscribes such payments and we are confident that California will not be subjected to pecuniary or any discipline by the United States statutes above referred to by Board's compliance with the mandate from which it appeals.

The judgment is affirmed.

Compton, J. and Beach, J., concurred.